```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

MAX STRAHAN,                        )
        Plaintiff,                  )
                                    )
        v.                          )      C.A. No. 11-11235-DPW
                                    )
JAMES ROWLEY, ET AL.,               )
        Defendants.                 )
```

                    MEMORANDUM AND ORDER
                         July 15, 2011

WOODLOCK, D.J.

I.    INTRODUCTION

   On July 13, 2011, plaintiff Max Strahan ("Strahan") filed this civil rights action arising out of an altercation with various Boston Police officers on August 2, 2008.

   In brief, Strahan alleges that he is a photographer, and routinely takes pictures of public events in the vicinity of the Boston Commons in Boston, Massachusetts. He uses digital photography as a means of self-expression and commerce. On August 2, 2008, he was taking photographs near a crane truck and crew completing a construction project adjacent to a public sidewalk. He stopped to take a few photographs of the truck and crew, but did not disturb the crew or interfere with their work. At that time, he inadvertently included in the photograph the Defendant, Kenisha Stewart ("Stewart"), a Boston Police Officer. She ordered Strahan to stop taking pictures, stating that he was violating the wiretap law in taking pictures of police without her permission. Stewart ordered Strahan to destroy the digital pictures he had already taken.

   Strahan alleges that Stewart was not in full uniform, not

wearing a holster nor armed with a weapon, handcuffs, or mace, and she was not wearing a Boston Police Department ("BPD") badge anywhere visible on her person. Strahan asked whether she was a BPD officer rather than a security guard or police cadet. He also asked her if she was on duty that day. Stewart ignored his questions and repeated her orders to cease taking pictures and to destroy those he had taken of her. Strahan refused her order since she could not show him a badge or gun, then advised he was going to file a complaint with her Internal Affairs Division. He took more pictures to document that she was out of uniform, and then fled down the street. Stewart screamed at him that she was going to get those pictures.

Strahan ran a few blocks into a pizza shop, where he ordered two slices of pizza. While eating them, he saw Stewart, in front of the pizza shop, on her radio while looking at him through the window. Then, a Boston EMS ambulance pulled up to the pizza shop and Stewart started to talk to the driver. Strahan panicked, and fled the pizza shop. As he fled, he heard Stewart asking other police for assistance in intercepting him and holding him until she arrived. He ran around the corner to the Boston Common AMC cinema complex on Tremont Street, at which point, a BPD employee, defendant James Rowley ("Rowley") rammed him with his bicycle, and grabbed him firmly by the shoulder, screaming at Strahan that he was under arrest. He held onto him until Stewart arrived, and then she explained to Rowley what happened, asserting she did not

arrest Strahan on her own because she did not have her badge or gun.  Stewart again ordered Strahan to destroy his pictures or be arrested.  Rowley then yelled at Strahan to do as Stewart said, or else he would hurt him and arrest him in order to back up Stewart.  Strahan remained immobilized while more BPD arrived on the scene (the John Doe defendants).  Strahan screamed to let him go, but Stewart and Rowley told him he was being detained for disorderly conduct.  Other BPD officers threatened to beat Strahan and to arrest him unless he destroyed his photographs of Stewart.  One defendant with whom Strahan had had a previous encounter (identified as "John Doe Motorcycle"), stated to Strahan that if he did not destroy the pictures immediately, he was going to "beat your ass," while grabbing his gun.  Compl. at ¶ 23.  Another BPD officer (identified as "Jon Doe Sergeant"), recognized Strahan and asked him why he was not saving the whales today.  He then recapped the situation by stating that either Strahan was going to destroy his pictures of Stewart out of uniform, or he was going to be arrested and his pictures would be confiscated.  Strahan feared that his camera would "accidentally" be destroyed, and all of his pictures, including hundreds of others stored in it, would be destroyed as well.  Fearing for his safety and property, Strahan agreed to destroy the pictures of Stewart, which he did under the supervision of Stewart and Rowley.  After doing this to their satisfaction, Strahan was released, but warned by defendant Jon Doe Sergeant that if he

took any more pictures of BPD officers, he was going to be arrested.

Strahan alleges that immediately after this incident, he was so emotionally distraught that he vomited.  He continues to feel threatened and intimidated by the alleged physical and verbal abuse by BPD officers that he still avoids visiting Boston Common to take photographs.

In addition to his claims against the BPD officers, Strahan alleges that the City of Boston and the Police Commissioner have encouraged and condoned unlawful police practices, and have been negligent in supervising, disciplining, and training its police officers.

Count I of the Complaint alleges Fourth Amendment violations by the individual police officers under 42 U.S.C. § 1983, for the unlawful seizure of his body and property.  Count II alleges First Amendment violations by the individual officers.  Count III alleges municipal liability under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978) against the City of Boston (and presumably the Commissioner).  Count IV asserts a claim under supplemental jurisdiction, and alleges violations of the Massachusetts Civil Rights Act, by the officers' use of threats to intimidate him to destroy his property and refrain from further photographing of police employees.  He seeks declaratory and injunctive relief, as well as monetary damages.

Along with the Complaint, Strahan filed a Motion for Leave to Proceed *in forma pauperis* (Docket No. 3), a Motion to Waive Filing Fees (Docket No. 3), a Motion for Temporary Restraining Order ("TRO")(Docket No. 4), and a Motion to Have the Instant Action Considered Related to Civil Action No. 10-10150 (Docket No. 5).

II.  DISCUSSION

    A.   <u>The Motion to Have the Instant Action Considered Related to Civil Action No. 10-10150-WGY</u>

Strahan requested the Clerk's Office assign this action as related to *Glik v. Cunniffe*, Civil Action No. 10-10150-LTS (initially assigned to Judge Young and later reassigned to Magistrate Judge Sorokin after the parties consented), appeal docketed as to qualified immunity, No. 10-1764 (1st Cir. June 24, 2010), on the grounds that the instant action contains similar allegations of police misconduct (*i.e.*, threats of arrest for taking digital images of Boston police employees performing their duties in public).

Because the *Glik* case was reassigned to Magistrate Judge Sorokin, the action before me was not reassigned to Judge Young; however, in accordance with Strahan's identification of relatedness as well as the Clerk's Office policy on case assignments (*i.e.*, to assign cases as related where a party indicates relatedness, leaving the case assignment/reassignment issues for review by the judicial officer thereafter), this

action was assigned to Magistrate Judge Sorokin. Nevertheless, because Strahan sought emergency relief in connection with his *Ex Parte* Motion for a Temporary Restraining Order (a matter not within the jurisdiction of a Magistrate Judge), the action was randomly reassigned to me in accordance with Clerk's Office policy.

In light of this procedural history of case assignment, in order to serve the purposes of judicial economy animating this Court's related case rule, LR 40.1(G), Strahan's Motion to Have the Instant Action Considered Related to Civil Action No. 10-10150 (Docket No. 5) is <u>ALLOWED</u>. In this connection, I will refer this case to Magistrate Judge Sorokin for all pre-trial matters, including, without limitation, reports and recommendations regarding dispositive motions or further requests for injunctive remedies.

### B. <u>The Motion for Leave to Proceed *In Forma Pauperis* and The Motion to Waive Filing Fees</u>

Upon review of Strahan's financial disclosures, I find that he lacks sufficient funds to pay the $350.00 filing fee for this action. Accordingly, his Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is <u>ALLOWED</u>. Strahan's Motion to Waive Filing Fees, (Docket No. 3), seeking both a waiver of the filing fee and for the Court to provide for the costs of service of the summons and pleadings is <u>ALLOWED</u> as to the waiver of the filing fee, and <u>ALLOWED</u> to the extent that the Court shall not bear the

costs of service, but instead, I will direct the United States Marshal Service to effect service as directed by Strahan, and to advance the costs of service.  The motion is DENIED in all other respects.

    C.    The *Ex Parte* Motion for a TRO

Strahan's *Ex Parte* Motion for a TRO seeks an emergency hearing with all the parties rather than an immediate TRO Order.

Strahan's bare allegations that he is under threat of imminent arrest without probable cause because the BPD has an unofficial policy of allowing its police employees to harass, capture and arrest without probable cause, those citizens taking pictures of them in the course of the performance of their duties in public spaces, is insufficient to meet the requirements of Fed R. Civ. P. 65(b).  Strahan, apparently aware of this insufficiency, is not seeking *ex parte* relief *per se*, but only a "hearing" for emergency relief, notwithstanding that he titled his pleading as a Motion for a TRO.  In effect, Strahan seeks to side-step the service rules of Fed. R. Civ. P. 4 -- without a sufficient showing under Rule 65(b) -- solely in an attempt to expedite his case.  Further, while Strahan has stated that he "notified" the Legal Department of the City of Boston of this lawsuit and his filings, he has not certified that he made any *bona fide* efforts to resolve or narrow the issues for hearing. Finally, it has been almost three years since the alleged

altercation, without further incident against Strahan by the BPD. Thus, at this juncture, I find that his assertion that he is under imminent threat of harm by the BPD to be speculative. In any event, without a response from the defendants to the allegations in the Complaint and the TRO motion, I decline to address whether preliminary injunctive relief is warranted; in any event, I do not find that requiring the defendants to forego their rights to proper service of process under Rule 4 is justified under these circumstances.

Accordingly, his Motion for a TRO (Docket No. 4) is <u>DENIED</u>.

D.  <u>Order for Issuance of Summonses and Service of Process by the United States Marshal Service</u>

After a preliminary screening of the Complaint pursuant to 28 U.S.C. § 1915(e), I will permit this action to proceed in its entirety, and will direct the Clerk to issue summonses as to those identified parties, but not as to the unidentified John Does. If and/or when Strahan can identify those defendants, he may seek the issuance of summonses at that time.

Additionally, as noted above, because Strahan is proceeding *in forma pauperis*, I will direct the United States Marshal Service to effect service of process as instructed by Strahan, and to advance the costs of service.

III.  CONCLUSION

Based on the foregoing it is hereby Ordered that:

1.  Plaintiff's Motion to Have the Instant Action Considered Related to Civil Action No. 10-10150 (Docket No. 5) is

    ALLOWED; accordingly, the instant case is referred to Magistrate Judge Sorokin for all pre-trial matters, including, without limitation, reports and recommendations regarding dispositive motions or further requests for injunctive remedies. This reference is not with prejudice to the parties choosing, as did the parties in Civil Action No. 10-10150, to consent to full reassignment of this case to Magistrate Judge Sorokin;

2. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is <u>ALLOWED</u>;

3. Plaintiff's Motion for a Waiver of Filing Fees (Docket No. 3) is <u>ALLOWED</u> in part, and <u>DENIED</u> in part;

4. Plaintiff's Motion for a Temporary Restraining Order (Docket No. 4), seeking an emergency hearing, is <u>DENIED</u>;

5. The Clerk shall issue summonses with respect to defendants James Rowley, City of Boston, Commissioner of the City of Boston Police Department, and Kenisha Stewart. No summonses shall issue with respect to numerous John Does; and

6. The Clerk shall send the summonses, a copy of the Complaint, and this Memorandum and Order to the plaintiff, who must thereafter serve the defendants in accordance with Federal Rule of Civil Procedure 4(m). The plaintiff may elect to have service made by the United States Marshal Service. If directed by the plaintiff to do so, the United States Marshal Service shall serve the summonses, a copy of the Complaint, and this Memorandum and Order upon the defendants, in the manner directed by the plaintiff, with all costs of service to be advanced by the United States Marshal Service. Notwithstanding Fed. R. Civ. P. 4(m) and Local Rule 4.1, the plaintiff shall have 120 days from the date of this Order to complete service.

SO ORDERED.

                                         <u>/s/ Douglas P. Woodlock</u>
                                         UNITED STATES DISTRICT JUDGE