UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
RICHARD MAXIMUS STRAHAN,            )
                                    )
       Plaintiff,                )
                                    )
v.                                  )   Civil Action No. 11-11235-DPW
                                    )
JAMES ROWLEY, et al.,               )
                                    )
       Defendants.               )
_____)

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS

December 20, 2011

SOROKIN, M.J.

Pending are the Motions to Dismiss of Defendants Kenisha Stewart (Docket #28), the City of Boston ("City") and the Commissioner for the Boston Police Department ("Commissioner") (Docket #32), and James Rowley (Docket #39) pursuant to Federal Rule of Civil Procedure 12(b)(6). I RECOMMEND that the Motions be ALLOWED, as res judicata principles bar the present Complaint.

I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

In Strahan's first suit he made the following allegations:

> On August 2, 2008, Plaintiff was taking photographs near the Boston Common. While he was taking photographs, Plaintiff photographed [Stewart]. [Stewart] "approached [Plaintiff] and told him to stop taking pictures . . . of her." Plaintiff took several photographs of [Stewart] "to document her threat" and then went to a pizza shop. Plaintiff saw [Stewart] outside the pizza shop, and although

---

[1] In keeping with the standard applicable to motions brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court takes the allegations in the complaint as true and makes all reasonable inferences in favor of the plaintiff. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)

> [Stewart] did not speak to Plaintiff, Plaintiff fled to a nearby movie theater. Outside the movie theater, Plaintiff "stopped at the entrance to confront" [Stewart], who had followed Plaintiff to the movie theater. At that point, a "bicycle riding Boston police employee" approached Plaintiff and told him that he was under arrest. At one point, [Stewart] said "I want those pictures . . . Its [sic] inappropriate that he took pictures of me." The Boston Police employee, and other such employees, told Plaintiff to erase the photograph that he had taken of [Stewart]. Plaintiff erased several photographs and then [Stewart] and the other Boston Police employees ordered Plaintiff to leave the area.
>
> After the incident, Plaintiff filed a complaint with the Internal Affairs Division ("IAD") of the Boston Police Department ("BPD").

Strahan v. Stewart, No. 10-cv-12278-JLT (Docket #31 at 1-2) (footnotes omitted). Strahan filed this first suit on December 30, 2010, in the District of Massachusetts against Stewart, Numerous John Does, and Commissioner Edward David for alleged violations of the Civil Rights Act, false arrest, and "tortious destruction of property." Strahan v. Stewart, No. 10-cv-12278-JLT (Docket #1). Judge Tauro dismissed Strahan's Complaint on June 13, 2011, for failure to state a claim upon which relief may be granted. Strahan v. Stewart, No. 10-cv-12278-JLT (Docket #30). On July 12, 2011, Strahan filed a notice of appeal. Strahan v. Stewart, No. 10-cv-12278-JLT (Docket #40). The First Circuit has yet to rule on the appeal.

On July 13, 2011, Strahan filed the instant case, proceeding pro se, asserting claims under 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act for alleged violations of his rights under the First and Fourth Amendment.

The facts alleged in this case are remarkably similar to those alleged in Strahan v. Stewart, No. 10-cv-12278-JLT. Strahan states that on August 2, 2008, he was peacefully taking pictures around Boston Common. (Complaint, Docket #1 at ¶ 13). At one point, he came upon a construction project and stopped to take a few pictures of the crane truck and its working crew. Id. Strahan inadvertently photographed Stewart, a Boston Police Department officer standing near the

crane, as part of the scene.  Id. at ¶¶ 8, 14.  Stewart walked over to Strahan and ordered Strahan to stop taking pictures of her, the crane truck, and its crew.  Id. at ¶ 14.  Stewart told Strahan that he was in violation of the wiretap law by taking pictures of a member of the police force without her permission.  Id.  Stewart ordered Stahan to destroy the pictures that he had taken.  Id.

Strahan asked Stewart if she was "for real BPD Police and not a security guard or cop cadet" as she was not wearing a holster and carried no weapon, handcuffs, or mace.  Id. at ¶ 15.  Strahan's question appeared to upset Stewart.  Id.  Stewart ignored Stahan's questions and repeated her orders to stop taking her picture and to destroy the pictures already taken.  Id.  Strahan told Stewart that he was not required to do anything Stewart ordered him to do because she could not show him a gun or a badge.  Id. at ¶ 16.  Strahan also told Stewart that he was going to file a complaint against her with the Internal Affairs Division of the Boston Police Department.  Id.  Stahan took more pictures of Stewart to document who she was and that she was out of uniform and then fled down the street. Id.  As he left, Strahan heard Stewart scream to him that she was going to get those pictures.  Id.

Strahan ran into a pizza shop a few blocks away in order to hide from Stewart.  Id. at ¶ 17.  He ordered and paid for two slices of pizza.  Id.  A minute later, Strahan looked out the front window of the pizza shop and saw Stewart talking on her radio while looking through the window at him.  Id.  A Boston EMS ambulance then pulled up to the pizza shop and Strahan observed Stewart talking to the ambulance driver.  Id.

Strahan panicked upon seeing Stewart and fled the pizza shop with his two slices of pizza. Id. at ¶ 18.  As he ran out the door of the pizza shop, Strahan heard Stewart saying into the radio that Strahan had just left the pizza shop, that she was in pursuit, and that Strahan was heading to the Boston Commons.  Id.  Strahan heard Stewart directing other Boston Police Department officers to

3

intercept Strahan, stop him, and to hold him in custody until she got there.  Id.

Strahan ran to the Boston Common AMC cinema complex with Stewart following behind him.  Id. at ¶¶ 19, 20.  As Strahan turned to see how close Stewart was, Rowley, a Boston Police Department officer, rode his bicycle into Strahan and grabbed Strahan firmly by the shoulder, causing Strahan to lose his slices of pizza.  Id. at ¶¶ 20, 27.  Rowley screamed that Strahan was under arrest and ordered Strahan to stop struggling.  Id. at ¶ 20.  Rowley reported on his radio "I got him."  Id.  Rowley asked Stewart what she wanted to do with Strahan.  Id.  Stewart told Rowley that Strahan took pictures of her at the detail site and that she wanted the pictures destroyed.  Id.  Stewart and Rowley both ordered Strahan to destroy the pictures or face arrest.  Id. at ¶ 21.  Rowley continued to keep his hands on Strahan.  Id.

Additional Boston Police Department Officers arrived at the scene forming a phalanx so that Strahan could not get away.  Id. at ¶ 22.  Strahan screamed that he wanted to leave and to let him go, but Stewart and Rowley shouted that he was going nowhere and was being detained for disorderly conduct.  Id.  The other officers threatened to beat Strahan up, arrest him, and then destroy his camera unless he destroyed the pictures of Stewart.  Id. at ¶¶ 23-24.

Fearing for his safety, Strahan told Stewart and Rowley that he was willing to destroy the pictures.  Id. at ¶ 26.  After deleting the pictures under Stewart and Rowley's supervision, Strahan was ordered to leave the area and was told by one officer that "If you take any more pictures of us [you're] going to get your ass arrested!"  Id.

Strahan crossed the street and then, upset by the incident, vomited on the sidewalk.  Id. at ¶ 28.

Strahan filed a written complaint against Stewart and others with the Internal Affairs

Department of the Boston Police Department several days later. Id. at ¶ 29. Internal Affairs completed its investigation in the beginning of 2009, exonerating Stewart from any wrong doing and refusing to investigate any of the other Boston Police Department officers including Rowley. Id. Strahan appealed the decision to the Community Ombudsman Oversight Panel. Id. The Panel affirmed the Internal Affairs decision. Id.

Each Defendant in this case has now moved to dismiss.

## II. STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, _ U.S _, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 129 S. Ct. at 1949. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. The Court's assessment of the pleadings is "context-specific," requiring "the reviewing court to

5

draw on its judicial experience and common sense." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1949) (alterations omitted). Although a "court must read a pro se plaintiff's allegations liberally and apply a less stringent standard to a pro se pleading than to a complaint drafted by counsel[,] . . . pro se plaintiffs must comply with the applicable procedural and substantive rules of law, and dismissal remains appropriate when the court lacks jurisdiction over the claims or the parties and when the complaint fails to even suggest an actionable claim." Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001).

III.  DISCUSSION

Because the original action was litigated in this court, the res judicata analysis is governed by federal law. Iannochino v. Rodalakis, 242 F.3d 36, 41 (1st Cir. 2001). "The doctrine of res judicata bars all parties and their privies from relitigating issues which were raised or could have been raised in a previous action, once a court has entered a final judgment on the merits in the previous action." Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 6 (1st Cir. 1992) (emphasis omitted). Claim preclusion, a specific application of res judicata, requires "(1) a final judgment on the merits in an earlier action; (2) sufficient identity between the cause of action asserted in the earlier and later suits; and (3) sufficient identity between the parties in the two suits." Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc., 181 F.3d 174, 177 (1st Cir. 1999).

A. Final Judgment on the Merits

"[I]n the absence of a clear statement to the contrary, a dismissal pursuant to Fed. R. Civ. P.

12(b)(6) is presumed to be with prejudice." United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 241 (1st Cir. 2004). Judge Tauro's dismissal of Strahan's Complaint in Strahan v. Stewart, pursuant to Stewart's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), contains no statement that it is without prejudice. Therefore, the dismissal is a final decision on the merits and has claim preclusive effect. Id.

B. Sufficient Identity Between the Causes of Action

To determine whether there is sufficient identity between an earlier and a later cause of action, federal courts employ a transactional approach. Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994). Under the transactional approach "[t]he necessary identity will be found to exist if both sets of claims - those asserted in the earlier action and those asserted in the subsequent action - derive from a common nucleus of operative facts." Id. In determining whether a factual grouping constitutes a "transaction" and what groupings constitute a "series," the court takes into consideration a wide variety of relevant factors, including, but not limited to, such things as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations[.]" Aunyx Corp., 978 F.2d at 7 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982)).

It is clear that the claims in both the instant case and in Strahan v. Stewart derive from a common nucleus of operative facts surrounding Strahan's encounter with Boston Police Department officers on August 2, 2008.

C. Sufficient Identity Between the Parties

In certain circumstances, defendants who were not parties to the prior litigation may invoke the doctrine of nonmutual claim preclusion to bar litigation of a claim against them. The doctrine

is appropriately applied "if the new defendants have a close and significant relationship with the original defendants" or "if the new party can show good reasons why he should have been joined in the first action and the old party cannot show any good reasons to justify a second chance[.]" In re El San Juan Hotel Corp., 841 F.2d 6, 10 (1st Cir. 1988). Courts have found that a close and significant relationship exists between the new and the original defendants where the new defendant in the second action, who was not joined in the first action, is alleged to have been a co-perpetrator or co-conspirator of the original defendant. Id.

1. Kenisha Stewart

Stewart was a party in the earlier action; there can be no dispute that she meets the identity of the parties criteria. Andrews-Clarke v. Lucent Techs., Inc., 157 F. Supp. 2d 93, 100 (D. Mass. 2001). Therefore, Strahan's claims against Stewart are barred. See Bay State HMO Mgmt., Inc., 181 F.3d at 177.

Accordingly, I RECOMMEND that the Court ALLOW Stewart's Motion to Dismiss.

2. James Rowley

In Strahan v. Stewart, Strahan asserted a conspiracy claim against Stewart and John Does alleging that they conspired to violated Strahan's rights. Although Rowley was not named in the complaint in Strahan v. Stewart, he can clearly be identified as a John Doe defendant. See Strahan v. Stewart, No. 10-cv-12278-JLT (Docket #1 at ¶¶ 14, 17) ("At this same moment one of the Defendant John Does - a bicycle riding Boston police employee - rode up to Strahan and blocked him with his bike, He then reach [sic] out his hand and grabbed Strahan's shoulder with much force. He ordered Strahan to stop and told Strahan he was under arrest. . . Strahan deleted three pictures of [Stewart] in front of the Defendant John Doe on the bicycle who originally put him in police

8

custody"). Indeed, Strahan moved to amend his complaint in Strahan v. Stewart, albeit unsuccessfully, to add Rowley as a party.[2] Strahan v. Stewart, No. 10-cv-12278-JLT (Dockets #37, 38). In the instant case, Strahan again asserts that Stewart and Rowley conspired to deprive him of his rights. As Stewart's alleged co-conspirator, Rowley shared a close and significant relationship with Stewart such that the doctrine of nonmutual claim preclusion bars Strahan's claims against Rowley.

Accordingly, I RECOMMEND that the Court ALLOW Rowley's Motion to Dismiss.

3. The City of Boston and The Commissioner for the Boston Police Department

In Count III of his Complaint, Strahan asserts claims against the City for the City's allegedly unlawful custom or policy in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.[3] In Silva v. City of New Bedford, 677 F. Supp. 2d 367 (D. Mass. 2009), the plaintiff initially filed suit against officers for the City of New Bedford for violations of state and federal laws arising out of plaintiff's arrest. Id. at 368. The plaintiff later filed suit against the City of New Bedford, based on the same arrest, for the negligence of its officers and for its alleged unlawful custom, procedure, and/or policy in violation of 42 U.S.C. §§ 1983 and 1988. Id. The court dismissed the action on the basis of nonmutual claim preclusion finding that the plaintiff sought to "predicate liability solely on the officers' actions and, in doing so, aligns this

---

[2] Strahan asserts that his motion to amend was incorrectly denied. However, this is not the appropriate forum to address this complaint. "Instead, appeal from denial of the motion to amend is the proper remedy." Silva v. City of New Bedford, 677 F. Supp. 2d 367, 370-71 (D. Mass. 2009).

[3] Strahan does not make any specific allegations against the Commissioner in his Complaint. Because the Commissioner is sued in his official capacity only, the suit against him is the functional equivalent of a suit against the entity he represents, namely the City of Boston. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).

9

case with the previous one under a form of derivative liability." Id. at 372. Like the plaintiff in Silva, Strahan seeks to predicate liability against the City and the Commissioner on the basis of its officers' actions. Thus the City and the Commissioner have shown good reason why it should have been joined in the first action and Strahan has shown no good reason to justify a second chance.

Accordingly, I RECOMMEND that the Court ALLOW the City and the Commissioner's Motion to Dismiss.

IV. CONCLUSION

I therefore RECOMMEND that the Court ALLOW the Defendants' Motions to Dismiss (Docket #s 28, 32, and 39).[4]

    /s / Leo T. Sorokin
UNITED STATES MAGISTRATE JUDGE

---

[4] The Parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140 (1985).